# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Matthew Beeman, individually and on behalf of all others similarly situated, | CASE NO. |
| PLAINTIFF, | |
| v. | |
| United Parks & Resorts, Inc., D/B/A SeaWorld Parks & Entertainment, Inc. | |
| DEFENDANT. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Matthew Beeman, individually and on behalf of all others similarly situated, alleges as follows based on personal knowledge as to himself, on the investigation of counsel, and on information and belief as to all other matters.

## NATURE OF THE ACTION

1.     Plaintiff brings this Class Action Complaint against United Parks & Resorts, Inc., D/B/A SeaWorld Parks & Entertainment, Inc. (hereinafter "United Parks" or "Defendant") for its use of "bait-and-switch" tactics that mislead consumers about the true price of tickets that Defendant sells to lure consumers into paying higher prices than they otherwise would.

---

CLASS ACTION COMPLAINT

2.    United Parks is "a global theme park and entertainment company that owns or licenses a diverse portfolio of award-winning park brands and experiences, including SeaWorld, Busch Gardens, Discovery Cove, Sesame Place, Water Country USA, Adventure Island, and Aquatica."[1] Defendant wholly owns and does business as SeaWorld Parks & Entertainment, Inc.

3.    SeaWorld Parks & Entertainment, Inc. operates the websites through which tickets are sold to Defendant's parks, including Busch Gardens Williamsburg and Water Country USA, both of which are located in Williamsburg, Virginia.

4.    Busch Gardens Williamsburg "is home to world-class roller coasters, award-winning entertainment, and more than 50 rides and attractions."[2] On information and belief, it is the largest ticketed attraction in the state of Virginia, both in terms of size and attendance.

5.    Water Country USA is Virginia's largest water park, offering a variety of water slides, pools, and other attractions.[3]

---

[1] https://unitedparks.com/about-us/

[2] https://buschgardens.com/williamsburg/

[3] https://watercountryusa.com/

CLASS ACTION COMPLAINT

6.      Defendant sells tickets to Busch Gardens Williamsburg and Water Country USA through separate but functionally identical ticketing websites. [4] Through these online marketplaces, Defendant sells tickets to millions of consumers residing in Virginia, neighboring states, and beyond. The advertised price for each ticket is accompanied by an undisclosed and unavoidable "Service Fee," which is revealed only at the final checkout screen. Consumers cannot complete a ticket purchase without paying this hidden fee.

7.      Defendant unlawfully advertises and displays ticket prices on its websites without including all mandatory fees or charges that customers must ultimately pay. Defendant uses a deceptively low initial price to lure consumers into the purchase process—the "bait." Then, after the consumer has relied on that low advertised price and decided to buy, Defendant adds a hidden "Service Fee"—the "switch."

8.      In other words, Defendant conceals its mandatory fees until after consumers have invested substantial time selecting tickets and have committed to purchasing based on the incomplete, deceptively low advertised price. Each stage of Defendant's multi-step checkout process is designed to increase consumer commitment so that, by the time the hidden fees are

---

[4] Defendant's Virginia ticketing websites are
https://buschgardens.com/williamsburg/tickets/theme-park-tickets/ and
https://watercountryusa.com/tickets/

CLASS ACTION COMPLAINT

revealed, consumers—having already expended time and effort—are more likely to complete the transaction.

9.    Accordingly, Plaintiff brings this action individually and on behalf of all similarly situated consumers who purchased tickets for a live event from Defendant's website during the relevant statutory periods. Based on Defendant's unlawful conduct Plaintiff seeks damages, restitution, and reasonable attorneys' fees and costs for violations of Virginia's All-In Pricing Law, Va. Code Ann. § 59.1-608, and the Virginia Consumer Protection Act (VCPA), Va. Code Ann. § 59.1-196 *et seq*.

## JURISDICTION AND VENUE

10.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23.

11.    The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). The putative class exceeds 100 members, the amount in controversy exceeds $5,000,000,[5] and at least one class member is a citizen of a state different from the Defendant.

12.    The Court has personal jurisdiction over the Defendant because its principal place of business is in this District. Additionally, the claims arise from and are directed at pricing policies, practices, and decisions devised,

---

[5] On information and belief, the Defendant has sold at least several hundreds of thousands of tickets during the statutory period.

CLASS ACTION COMPLAINT

approved, and controlled by the Defendant operating from its headquarters in this District.

13.    Venue is proper in this Court because Defendant resides in this District and a substantial portion of the occurrences and wrongdoing complained of herein occurred in this District.

## PARTIES

14.    Plaintiff Matthew Beeman is a natural person and a resident of Virginia.

15.    Plaintiff purchased one ticket to Busch Gardens Williamsburg on July 16, 2025, two tickets to Water Country USA on July 17, 2025, and one ticket to Water Country USA on July 18, 2025, all through Defendant's online ticketing websites.

16.    For each transaction, Plaintiff was presented with a drop-down menu allowing him to select the number of tickets. After selecting the desired quantity, Plaintiff was prompted to select a date. For each available date, a corresponding ticket price was displayed.

17.    Having selected specific dates and ticket quantities at stated prices, Plaintiff finalized his selections by pressing a brightly colored "Add to Cart" button.

18.    On the next screen, Plaintiff was offered additional optional add-on experiences.

19.    On the following screen, Plaintiff was presented with an itemized breakdown that included the ticket price as well as a line labeled "Taxes & Fees."

20.    For both the Busch Gardens and Water Country USA purchases, Plaintiff was shown $11.99 in "Taxes & Fees."

21.    On the final checkout screen, Plaintiff entered his billing information, including his full name, address, and phone number, followed by his credit card information.

22.    After entering his payment information, Plaintiff was presented with a display inviting donations to conservation programs as he scrolled down the final checkout screen. Only after scrolling past that section did Plaintiff, for the first time, encounter Defendant's hidden service fee.

23.    While the prior screen had referenced "Taxes & Fees," no portion of the hidden fee consisted of lawful taxes or government-imposed charges. At the very bottom of the final checkout screen, Plaintiff was shown an itemized transaction summary listing "Taxes" as "$0.00" and a "Service Fee" of $11.99.

24.    The price advertised by Defendant did not include all mandatory fees.

25.    Instead, Defendant charged Plaintiff a significant, mandatory transaction fee that was not included in the listed price for tickets to Busch Gardens Williamsburg and Water Country USA.

CLASS ACTION COMPLAINT

26.    Plaintiff was unaware that the tickets he selected included additional mandatory fees at the time he made his selections.

27.    The deceptively low, initially advertised price was a substantial factor in Plaintiff's decision to purchase the tickets.

28.    Defendant lured Plaintiff in with deceptively low initial prices, cultivating purchasing commitment based on that initial price.

29.    Defendant intentionally excluded these mandatory fees from the displayed and advertised ticket prices and disclosed them only after Plaintiff—and all other consumers purchasing tickets through Defendant's websites—had invested significant time and effort selecting tickets.

30.    Defendant United Parks & Resorts, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Orlando, Florida.

31.    Defendant wholly owns and conducts business as SeaWorld Parks & Entertainment, Inc., a corporation organized under the laws of Delaware with its principal place of business in Orlando, Florida.

## DRIP PRICING AND LATE DISCLOSED HIDDEN FEES ARE DECEPTIVE, UNFAIR, ANTI-CONSUMER AND ANTI-COMPETITIVE

32.    Drip pricing is a bait and switch pricing technique "in which firms advertise only part of a product's price and reveal other charges later as the

CLASS ACTION COMPLAINT

customer goes through the buying process."[6] In a drip pricing scheme, mandatory fees — like those charged by Defendant — are foisted upon consumers after they have been lured in by a misleadingly low advertised price. These surprise fees have been dubbed "junk fees" by the Federal Trade Commission ("FTC").[7] Bait-and-switch junk-fee markups are particularly widespread among online live event ticket platforms. Research shows that consumers ambushed by hidden fees at checkout pay upward of twenty percent more than when the actual price was disclosed upfront.[8]

33.    It is estimated that junk fees cost Americans over $90 billion each year.[9] Research has shown that consumers who are not provided the complete price until checkout are likely to proceed with their purchase even after the

---

[6] Trade Regulation Rule on Unfair or Deceptive Fees, Fed. Trade Comm'n (Jan. 2025), available at https://www.federalregister.gov/documents/2025/01/10/2024-30293/trade-regulation-rule-on-unfair-or-deceptive-fees

[7] The FTC classifies "junk fees" as "unfair or deceptive fees that are charged for goods or services that have little or no added value to the consumer including goods or services that consumers would reasonably assume to be included within the overall advertised price" or fees that are "hidden," such as those "disclosed only at a later stage in the consumer's purchasing process or not at all." Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011, 87 Fed. Reg. 67413 (proposed Nov. 8, 2022) (codified at 16 C.F.R. pt. 464).

[8] Morgan Foy, University of California-Berkley, Haas School of Business, "Buyer Beware: Massive Experiment Shows Why Ticket Sellers Hit You with Last Second Fees" (Feb. 9, 2021), https://newsroom.haas.berkeley.edu/research/buyerbeware-massive-experiment-shows-why-ticketsellers-hit-you-with-hidden-fees-drip-pricing/ (concluding that consumer expenditure on tickets increased 21% when true price not disclosed initially).

[9]https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2024/04/24/readout-of-white-house-state-legislators-convening-on-junk-fees/

CLASS ACTION COMPLAINT

junk fee is revealed because they have already factored the deceptively low price into their decision and built purchasing commitment as they clicked through the transaction.

34. Research shows that consumers place stock in initial prices and tend to proceed with transactions even after exorbitant and unpredictable fees have been added despite their better judgment—despite the fact that continuing to search for cheaper prices would be more "optimal"—because consumers want to avoid "the cost of the time and cognitive effort involved" in continuing to search for a product or service.[10] Once consumers decide what to buy, they are unlikely to depart from that decision because of the "additional cognitive effort" involved in resuming their search.[11] Indeed, as companies that engage in junk fee practices are aware, consumers choose products or services based on the advertised "base price," and not based on the price inclusive of fees, which is obscured by partitions in the purchase flow.[12]

---

[10] Mary W. Sullivan, Economic Issues: Economic Analysis of Hotel Resort Fees, Bureau of Economics Fed. Trade Comm'n (Jan. 2017), at 16–17, https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf

[11] Id. at 17.

[12] Alexander Rasch et al., Drip Pricing & Its Regulation: Experimental Evidence, 176 J. Econ. Behavior & Org. 353 (2020), available at https://www.sciencedirect.com/science/article/abs/pii/S0167268120301189?via%3Dihub (In controlled experiment, buyers "based their purchase decision exclusively on the base price."). See also id. ("buyers may be hurt" because "[w]hen there is uncertainty over possible drip prices . . . consumers more frequently fail to identify the cheapest offer.")

CLASS ACTION COMPLAINT

In fact, studies show that "consumers exposed to drip pricing . . . are significantly more likely to 1) initially select the option with the lower base price, 2) make a financial mistake by ultimately selecting the option that has a higher total price than the alternative option, given the add-ons chosen, and 3) be relatively dissatisfied with their choice."[13]

35.     The FTC's Bureau of Economics has found that consumers are harmed by drip pricing because they are forced "either to incur higher total search and cognitive costs or to make an incomplete, less informed decision that may result in a more costly [transaction], or both."[14]

36.     The FTC has characterized junk fees as especially harmful when they are hidden (i.e., disclosed only at a later stage in the purchasing process), because openly disclosed junk fees enable consumers to immediately determine that the cost of an item is not favorable relative to the cost charged by competitors and choose to do business elsewhere. As a result, the product or service listed by bad actors like the Defendant appears cheaper to consumers than competitors' products or services, even though the total cost

---

[13] Shelle Santana et al., (2020) Consumer Reactions to Drip Pricing. Marketing Science 39(1):188-210. https://doi.org/10.1287/mksc.2019.1207

[14] Mary W. Sullivan, Economic Issues: Economic Analysis of Hotel Resort Fees, Bureau of Economics     Fed.     Trade     Comm'n     (Jan.     2017),     at     16–17, https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf

CLASS ACTION COMPLAINT

of the product or service, inclusive of junk fees, is equally, if not more, expensive than those other companies' products or services.

37.    Adding hidden junk fees after securing purchase commitment also generates significant burden for individual consumers, who, when confronted with drip pricing "pay upward of twenty percent more than when the actual price was disclosed upfront."[15] By concealing the actual price of tickets, sellers like Defendant force consumers to spend "additional time" comparison shopping for tickets than they otherwise would which represents a cognizable injury.[16]

38.    In sum, using bait-and-switch hidden fee tactics are bad for markets and bad for consumers.

## VIRGINIA ENACTED ONE OF THE NATION'S FIRST LAWS PROTECTING CONSUMERS FROM HIDDEN FEES

39.    On May 2, 2025, Virginia took aim at junk fees, enacting Senate Bill 1212, Virginia's All-In Pricing law. SB 1212, which became effective on

---

[15] *See* Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011, supra n.4 (explaining that hidden junk fees therefore "impose substantial economic harms on consumers")

[16] *See e.g. Kahn v. Walmart Inc.*, 107 F.4th 585, 601 (7th Cir. 2024)("Bait-and-switch pricing schemes like the one alleged here lead to injuries that consumers cannot reasonably avoid, which come in the form of higher prices and search costs."(internal quotations omitted); Tom Blake et al., (2021) Price Salience and Product Choice. Marketing Science 40(4):619-636. https://doi.org/10.1287/mksc.2020.1261 (A peer reviewed industry study, finding that drip pricing "makes price comparisons difficult and results in consumers spending more than they would otherwise" and that "users who weren't shown the ticket fees upfront ended up spending about 20% more money and were 14% more likely to complete [the transaction].").

CLASS ACTION COMPLAINT

July 1, 2025, is one of the first laws of its kind in the United States. The law prohibits  the "advertise[ment] or display [of] a price for goods or services without clearly and conspicuously[17] displaying the total price, which shall include all mandatory fees or surcharges." Va. Code Ann. § 59.1-608(A). "Mandatory fees or surcharges" includes any additional fee or surcharge that must be paid in order to purchase the good or service being advertised." Va. Code Ann. § 59.1-607. Mandatory fees or surcharges do not include "taxes or fees imposed on the consumer by a government or government-approved entity or assessment fees of a government-created special district or program paid to the government or government-approved entity." *Id.*

40.    Consumers injured by a violation of Virginia's All-In Pricing law are entitled to the same remedies as those afforded under the VCPA. Va. Code Ann. § 59.1-610, including statutory damages.

41.    Many states and the federal government have joined Virginia and banned drip pricing practices by ticket sellers. Yet, as discussed below, Defendant has engaged in a sustained campaign of drip pricing, in clear violation of Virginia law.

---

[17] "Clear and conspicuous" or "clearly and conspicuously" means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Va. Code Ann. § 59.1-607 (adopting definition from Va. Code Ann. § 59.1-207.45.).

CLASS ACTION COMPLAINT

## DEFENDANT'S UNLAWFUL HIDDEN FEES

42.    Defendant's markup tactics operate uniformly across all ticket offerings for Busch Gardens Williamsburg and Water Country USA. When users select the "Buy Tickets" button on Defendant's websites, they are presented with a list of ticket types and corresponding prices—ranging from general admission daily tickets to anytime-entry, multi-day, multi-park, and season tickets. On that same screen, users are prompted to select the desired ticket quantity. After doing so, users click the "Add to Cart" button and are taken to a new screen that offers optional paid add-on experiences.

43.    Only after consumers have (1) selected a specific number of tickets, (2) at a specific price, (3) for a specific date, (4) added those tickets to their cart, and (5) accepted or declined additional experiences, are they confronted with hidden fees. These fees are initially presented under the false label of "Taxes & Fees," but on the final point-of-purchase screen it is revealed that the so-called "Taxes & Fees" are in fact entirely service fees. No portion of these charges constitutes any legitimate, government-imposed tax or fee. In fact, under Virginia law, "tax does not apply to sales of tickets, fees, charges, or voluntary contributions for admission to places of amusement." Va. Admin. Code § 23VAC10-210-30 (Admissions). Only after consumers have navigated multiple screens, entered their email address, full name, billing address, phone

CLASS ACTION COMPLAINT

number, and payment information are they finally confronted with the undisclosed service fee—displayed immediately above the final "Pay" button.

44.    The hidden service fee is variable, starting at $11.99 for a single ticket to either Busch Gardens or Water Country USA and increasing on a per-ticket basis. Defendant's online purchase flow is intentionally designed with "dark patterns"—defined as online design tactics that trick or manipulate users into making choices they might not otherwise make—to heighten purchasing commitment and pressure consumers to complete transactions despite the sudden addition of significant, undisclosed fees relative to the total ticket price.

45.    As depicted in Figure 1 below, when users press the "Buy Tickets" button, they are presented with a list of ticket types and the prices for those tickets. Users are then prompted to select a quantity of tickets and a date of attendance.

CLASS ACTION COMPLAINT



***Figure 1[18]***

46.    After selecting a date, customers encounter a popup screen, shown at Figure 2 below, where they are prompted to choose the date and quoted a ticket price for that date.

---

[18] The exemplar purchase flow is for a single day general admission ticket to Busch Gardens Williamsburg.  Water Country USA's website uses an identical purchase flow and hidden fee.

CLASS ACTION COMPLAINT



*Figure 2*

47.    Consumers are then prompted to add the selected tickets to their

cart as shown in Figure 3.



*Figure 3*

CLASS ACTION COMPLAINT

48.    Next, consumers are directed to checkout, being quoted a Subtotal in large, bold letters with "Plus taxes & fees" in small, faint print, without the amount or type of "taxes & fees" being disclosed, as shown in Figure 4:



**Figure 4**

49.    From there, users encounter a screen that offers certain additional paid experiences, as shown in Figure 5:



**Figure 5**

CLASS ACTION COMPLAINT

50.     Only after selecting a number of tickets, a date, being quoted a ticket price, choosing to buy based on that price, and picking any additional experiences, are users confronted with the first indication of Defendant's hidden fees. As shown in Figure 6, the hidden fee is falsely labeled as "Taxes & Fees" because sales taxes do not apply to such transactions in the Commonwealth of Virginia:



***Figure 6***

51.     Further, as shown above at Figure 6, at the same time consumers are first shown the hidden fee, they are put on a countdown clock. Countdown clocks assist rulebreakers like Defendant to pressure consumers into completing their purchases at the end of their transaction despite the increased price by creating a false sense of urgency. The FTC has called out these countdown tactics as an anti-consumer dark pattern.[19]

---

[19] *Id.* at 22.

CLASS ACTION COMPLAINT

52.     When users proceed to the final point of purchase screen, they are first directed to input all of their personal, billing, and payment information, as shown in Figure 7:



**Figure 7**

CLASS ACTION COMPLAINT

53.    After inputting their personal information, users then must scroll past a donation option before finally being presented with an "Order Summary." This Order Summary, which is right above the final "Pay" button reveals that what was listed as "Taxes & Fees" was, in truth, not composed of any tax but was all an illegal fee,[20] as shown in Figure 8:

**Make a Donation**



**Order Summary**

| | | |
|---|---|---|
| 🏅 Buy with confidence. No fee to reschedule or change your purchase. Learn More | | |

**Busch Gardens Williamsburg Single-Day Ticket**
📅 Reservation 09/26/2025

Remove

Ticket ONLY (Ages 3+)    $64.99     [ 1 ▼ ]     $64.99

| | |
|---|---|
| Subtotal | $64.99 |
| Taxes | $0.00 |
| Service Fee ⓘ | $11.99 |
| **Total** | **$76.98** |
| You saved $53.00 | |

[ Pay ]

***Figure 8***

---

[20] While Virginia's All in Pricing law allows for the exclusion from the list price of fees imposed by a government, the Defendant's wholly private, pass through "Service Fee" does not qualify.

54.    Defendant has knowingly employed an illegal hidden fees strategy in blatant violation of Virginia law. The brazenness of Defendant's conduct is exemplified not just by the fact that Defendant, a multi-billion-dollar enterprise with significant legal resources is undoubtedly aware of Virginia law, but also that Defendant complies with upfront pricing in other states where it operates.[21]

55.    Complying with Virginia's consumer protection laws is straightforward: a company like Defendant must display and advertise a price of its goods or services that includes all mandatory fees. Defendant could have easily configured its website to list ticket prices inclusive of all mandatory fees. However, Defendant chose not to, precisely to take advantage of the fact that hiding the mandatory fees at the initial stages increases conversions from click-through browsing to ticket sales, even as it harms consumers, disadvantages compliant competitors, and is illegal.

## CLASS ACTION ALLEGATIONS

56.    Plaintiff brings this action on his own behalf and on behalf of all persons similarly situated as a class action.

57.    Plaintiff seeks to represent a class defined as:

---

[21] *See e.g.* the all-in pricing purchase flow at Sea World San Diego, another of Defendant's properties, compliant with Cal. Civ. Code § 1770(a)(29)(A) available at: https://seaworld.com/san-diego/tickets/

CLASS ACTION COMPLAINT

All persons who, while in the Commonwealth of Virginia and within the applicable statutory period, up to and including the date of final judgment in this action, purchased a ticket to Busch Gardens Williamsburg or Water Country USA on a ticketing website operated by Defendant where all mandatory fees were not included in the initially displayed or advertised price of the ticket.

58.    Plaintiff also seeks to represent a drip pricing subclass, defined as:

All persons who, while in the Commonwealth of Virginia, from July 1, 2025, up to and including the date of final judgment in this action, purchased a ticket to Busch Gardens Williamsburg or Water Country USA on a ticketing website operated by Defendant where all mandatory fees were not included in the initially displayed or advertised price of the ticket.

59.    Excluded from the classes are Defendant, its corporate parents, subsidiaries, franchisees and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded person or entities, and the Court to which this action is assigned. Additionally, excluded is the Judge or Magistrate Judge presiding over this action, their staffs, and their families.

60.    Plaintiff reserves the right to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues based upon discovery or further investigation.

61.    ***Numerosity.*** The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of class members is currently unknown to Plaintiff, on information and belief the

CLASS ACTION COMPLAINT

Class is comprised of thousands of consumers in the Commonwealth of Virginia. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by postal or electronic mail and/or publication through the Defendant's sales records.

62. ***Commonality.*** Common questions of law and fact exist for all Class members and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to:

(a)    Whether Defendant's hidden service fee was a "mandatory fee or surcharge" under Virginia law;

(b)    Whether the Class members were uniformly subjected to a hidden fee;

(c)    Whether Defendant's conduct alleged above violated Va. Code Ann. § 59.1-608;

(d)    Whether Defendant's conduct alleged above violated Va. Code Ann. § 59.1-196 *et seq*.

(e)    Whether Plaintiff and the Class are entitled to, and the amount of any, damages and/or restitution; and

(f)    Whether Plaintiff and the Class are entitled to attorneys' fees and costs.

CLASS ACTION COMPLAINT

63. ***Typicality.*** Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all proposed Class members, was exposed to Defendant's misrepresentations, purchased tickets on Defendant's websites, and sustained damages from Defendant's uniform wrongful conduct, based upon Defendant's wrongful acts alleged herein.

64. ***Adequacy***. Plaintiff will fairly and adequately protect the Class members' interests. Plaintiff has no interest antagonistic to the Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class actions and consumer-protection cases.

65. ***Superiority***. The class mechanism is superior to other available means for the fair and efficient adjudication of Class members' claims. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by this case's complex legal and factual issues. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

CLASS ACTION COMPLAINT

court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

66.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

67.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of the VCPA, Va. Code Ann. § 59.1-196 *et seq*.
### (by Plaintiff individually and on behalf of putative Class members)

68.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

69.     Plaintiff and the members of the Class are "persons" within the meaning of Va. Code Ann. § 59.1-198.

70.     Defendant is a "supplier" as defined by Va. Code Ann. § 59.1-198 because it is engaged in the business of advertising, selling, and offering for sale goods or services to consumers in the Commonwealth of Virginia.

71.     Defendant's sale of admission tickets to Busch Gardens Williamsburg and Water Country USA constitutes a "consumer transaction"

CLASS ACTION COMPLAINT

as defined by § 59.1-198, because it involves the advertisement and sale of goods or services for personal, family, or household purposes.

72. The VCPA is remedial legislation intended to "promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197.

73. Defendant engaged in deceptive, misleading, and unfair acts and practices in violation of Va. Code Ann. § 59.1-200, including but not limited to: (1) Advertising admission tickets on its websites with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised, in violation of § 59.1-200(A)(8); (2) Using deception, false pretense, or misrepresentation in connection with a consumer transaction, in violation of § 59.1-200(A)(14); and (3) Misrepresenting the nature or amount of fees or charges owed by consumers, including falsely labeling a portion of the illegal service fee as "Taxes," thereby creating the false impression that the fee was government-imposed or mandatory.

74. Defendant advertised ticket prices for Busch Gardens Williamsburg and Water Country USA that did not include all mandatory fees or surcharges. Defendant's online sales platforms displayed deceptively low prices throughout the purchase process while concealing a mandatory "Service Fee" that was only revealed on the final checkout screen, after consumers had committed substantial time and effort to the transaction. Moreover, Defendant

concealed the true nature of the additional fee by falsely claiming amounts to be charged in addition to the ticket price were "Taxes and Fees" when in fact they were just illegal fees.

75.    Defendant's omission of the mandatory fee was material, as the total price of admission tickets was a primary factor in consumers' purchasing decisions.

76.    Defendant intentionally designed its sales process to mislead consumers by: presenting lower initial prices; hiding the true, higher cost of tickets until the end of the checkout process; and using "dark patterns," including countdown timers, to heighten purchasing pressure and reduce the likelihood that consumers would abandon the transaction after learning of the hidden fee.

77.    Defendant's deceptive conduct had the tendency, capacity, and effect of misleading reasonable consumers and did in fact mislead Plaintiff and members of the Class.

78.    Plaintiff and the Class reasonably relied on Defendant's representations that the listed price was the full ticket price and were induced to purchase tickets and pay the hidden service fee as a result.

79.    Plaintiff and the Class suffered ascertainable losses as a result of Defendant's unlawful conduct, including but not limited to the amount of the undisclosed and unlawful fees paid, the loss of the opportunity to make

informed purchasing decisions, and the expenditure of additional time and cognitive effort caused by Defendant's deception.

80.    Defendant's violations of the VCPA were willful, knowing, and intentional, as Defendant knew or should have known of its obligations to truthfully and accurately present the price of admissions tickets under the VCPA and nonetheless continued to advertise and sell tickets using hidden-fee, drip-pricing tactics.

81.    Pursuant to Va. Code Ann. § 59.1-204, Plaintiff and the Class seek the greater of their actual damages or statutory damages of $500 per violation (or $1,000 per willful violation), as well as reasonable attorneys' fees and costs.

82.    Plaintiff and the Class further seek equitable relief, including restitution and disgorgement of all unlawfully obtained monies, and such other relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### Violation of Virginia's All-In Pricing Law,  Va. Code Ann. § 59.1-608. (by Plaintiff, individually and on behalf of the Drip Pricing Subclass)

83.    Plaintiff re-alleges and incorporates by reference paragraphs 1-67 as if fully set forth herein.

84.    Plaintiff and the members of the Drip Pricing Subclass are "persons," and Defendant is a "supplier" engaged in "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198.

85.   Defendant advertises and sells admission tickets to Busch Gardens Williamsburg and Water Country USA to consumers for personal, family, and household use.

86.   Virginia's All-In Pricing Law, Va. Code Ann. § 59.1-608(A), prohibits any supplier, in connection with a consumer transaction, from "advertising or displaying a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges."

87.   "Mandatory fees or surcharges" include any additional amount that must be paid in order to purchase the advertised good or service, and exclude only taxes or assessments imposed by a government or government-approved entity. Va. Code Ann. § 59.1-607.

88.   Defendant violated § 59.1-608 by advertising and displaying ticket prices that did not include mandatory service fees that consumers were required to pay in order to complete a ticket purchase.

89.   At every step of Defendant's online purchase flow, consumers were shown ticket prices that appeared to be complete, yet Defendant added a hidden "Service Fee" only at the final checkout page—well after consumers had decided to buy based on the advertised price.

CLASS ACTION COMPLAINT

90.     No portion of Defendant's hidden service fee was imposed by any government or government-approved entity. The fee was entirely created and retained by Defendant for its own benefit.

91.     Defendant's failure to include mandatory fees in its displayed prices rendered its price advertisements false, misleading, and deceptive, and deprived consumers of the ability to compare true prices or make informed purchasing decisions.

92.     Defendant's unlawful omission was material and caused injury to Plaintiff and the Drip Pricing Subclass, including: payment of unlawful, undisclosed fees, loss of the opportunity to make informed purchasing choices; and time and effort wasted navigating Defendant's misleading checkout process.

93.     Pursuant to Va. Code Ann. § 59.1-610, a violation of § 59.1-608 constitutes a prohibited practice under the Virginia Consumer Protection Act and is subject to all enforcement provisions and remedies provided by Va. Code Ann. §§ 59.1-196 et seq.

94.     Defendant's violations were willful and knowing. Defendant, a sophisticated national entertainment company, knew or should have known of the requirements of Virginia's All-In Pricing requirements, which took effect July 1, 2025, yet continued to use drip-pricing tactics and hidden service fees designed to mislead consumers and inflate profits.

CLASS ACTION COMPLAINT

95.     As a direct and proximate result of Defendant's conduct, Plaintiff and the subclass suffered ascertainable losses and seek: Restitution and disgorgement of unlawfully obtained monies; the greater of actual damages or statutory damages of $500 per violation, or $1,000 per willful violation, under §§ 59.1-610 and 59.1-204; and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class prays for relief and judgment as follows:

A.  For an order certifying this case as a class action and appointing Plaintiff's counsel as Class Counsel;

B.  For an order finding in favor of Plaintiff and the Class on all claims alleged herein;

C.  For actual or statutory damages in amounts allowed by law and/or to be determined by the Court and/or jury;

D.  For prejudgment interest on all amounts awarded;

E.  For an order of restitution and all other forms of equitable monetary relief appropriate by statute;

F.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit, as appropriate by statute; and

G.  Awarding such other equitable or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

CLASS ACTION COMPLAINT

Dated: October 6, 2025

Respectfully Submitted,

**RAVINDRAN LAW FIRM, PLLC**

By: _/s/ Arun G. Ravindran_
Arun G. Ravindran, Esq. (66247)
2525 Ponce de Leon Blvd., Suite 300
Coral Gables, FL 33134
Telephone: (305) 677-8713
E-Mail: arun@ravindranlaw.com
_Counsel for Plaintiff and the Putative Class_

CLASS ACTION COMPLAINT