UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW BEEMAN,

Plaintiff,

v. Case No: 6:25-cv-1931-JSS-DCI

UNITED PARKS & RESORTS, INC.,

Defendant.
___________________________________/

**ORDER**

Defendant, United Parks & Resorts, Inc., D/B/A SeaWorld Parks & Entertainment, Inc., moves to dismiss the complaint. (Dkts. 22, 26.) Plaintiff, Matthew Beeman, opposes the motion. (Dkt. 23.) Upon consideration, for the reasons outlined below, the court denies the motion.

**BACKGROUND**[1]

Defendant is "a global theme park and entertainment company that owns or licenses a diverse portfolio of award-winning park brands and experiences, including SeaWorld, Busch Gardens, Discovery Cove, Sesame Place, Water Country USA, Adventure Island, and Aquatica." (Dkt. 1 at 2 (quotation omitted).) Defendant operates websites through which tickets are sold to Defendant's parks, including Busch

[1] The court accepts the well-pleaded factual allegations in the amended complaint as true and construes them in the light most favorable to Plaintiff. *See Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002) (en banc).

Gardens Williamsburg[2] and Water Country USA,[3] both of which are located in Williamsburg, Virginia. (*Id.*) According to the complaint, on these websites, "[t]he advertised price for each ticket is accompanied by an undisclosed and unavoidable [s]ervice [f]ee, which is revealed only at the final checkout screen" and "[c]onsumers cannot complete a ticket purchase without paying this hidden fee." (*Id.* at 3 (quotation omitted).) Purportedly, Defendant "advertises and displays ticket prices on its websites without including all mandatory fees or charges that customers must ultimately pay." (*Id.*) Thus, the complaint contends that "Defendant conceals its mandatory fees until after consumers have invested substantial time selecting tickets and have committed to purchasing based on the incomplete, deceptively low advertised price." (*Id.*)

Plaintiff, a resident of Virginia, "purchased one ticket to Busch Gardens Williamsburg on July 16, 2025, two tickets to Water Country USA on July 17, 2025, and one ticket to Water Country USA on July 18, 2025, all through Defendant's online ticketing websites." (*Id.* at 5.) For each transaction, Plaintiff proceeded through a series of webpages through which he selected the number of tickets, the date, and any additional optional add-on experiences. (*Id.*) For both of Plaintiff's purchases, he was then presented with an itemized breakdown that included the ticket price as well as a line that listed $11.99 in "Taxes & Fees." (*Id.* at 6.) Plaintiff was then prompted to

---

[2] Busch Gardens Williamsburg "is home to world-class roller coasters, award-winning entertainment, and more than [fifty] rides and attractions." (*Id.* (quotation omitted).)
[3] Water Country USA is a water park with "a variety of water slides, pools, and other attractions." (*Id.*)

enter his billing and credit card information. (*Id.*) Finally, on the last page, "Plaintiff, for the first time, encounter[ed] Defendant's hidden service fee," as "[a]t the very bottom of the final checkout screen, Plaintiff was shown an itemized transaction summary listing 'Taxes' as '$0.00' and a 'Service Fee' of $11.99." (*Id.*) Accordingly, the complaint alleges that "[t]he price advertised by Defendant did not include all mandatory fees" and instead Defendant later added "a significant, mandatory transaction fee that was not included in the listed price for tickets to Busch Gardens Williamsburg and Water Country USA." (*Id.*)

Plaintiff brings two counts: the first for violations of Virginia Consumer Protection Act (VCPA), Va. Code Ann. § 59.1-196, and the second for violations of Virginia's All-In Pricing Law, Va. Code Ann. § 59.1-608. (Dkt. 1 at 25–31.)

**APPLICABLE STANDARDS**

In deciding a motion to dismiss for failure to state a claim, the court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff[s]." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). Typically, a court analyzing a motion to dismiss considers only the four corners of the complaint and the exhibits attached to the complaint. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). To survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable" for the alleged misconduct. *Id.* While "detailed factual allegations" are not generally required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

A claim sounding in fraud "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). To meet this particularity requirement, the claim must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997). In other words, the claim must provide "the who, what, when[,] where, and how" of the alleged fraudulent activities. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quotation omitted).

## ANALYSIS

### A. The VCPA and Virginia's All-In Pricing Law

The VCPA "declares unlawful a broad range of fraudulent acts or practices by a supplier, including." *Physicians Comm. for Responsible Med. v. Gen. Mills, Inc.*, 283 F. App'x 139, 141 (4th Cir. 2008) (quotation omitted). Plaintiff brings claims pursuant to Va. Code Ann. § 59.1-200(A)(8), which prohibits "[a]dvertising goods or services

with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised," and § 59.1-200(A)(14), which declares unlawful "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." (Dkt. 1 at 26.) Defendant argues that the complaint should be dismissed because tickets to Defendant's parks do not fall within the scope of the VCPA nor Virginia's All-In Pricing Law. (Dkt. 13 at 4.) Specifically, Defendant asserts that a ticket to Defendant's parks is neither a good nor a service. (Dkt. 22 at 5–9.) Plaintiff disagrees. (Dkt. 23 at 5–10.)

The VCPA defines "consumer transaction" as "[t]he advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes." Va. Code Ann. § 59.1-198.[4] It defines goods as "all real, personal, or mixed property, tangible or intangible." *Id.* It also explains that the term services "includes but is not limited to . . . work performed in the business or occupation of the supplier," with supplier defined as "a seller, lessor, licensor, or professional that advertises, solicits, or engages in consumer transactions." *Id.*

Under Virginia law, an admission ticket is a license. *See W.W.V. Co. v. Black*, 113 Va. 728, 730 (1912) (referring to a theater ticket as a license); *see also Simms v. Deggeller Attractions, Inc.*, No. 7:12-CV-00038, 2012 WL 1108779, at *2 (W.D. Va. Mar. 30, 2012) ("[T]he purchase of a theatre ticket gives rise to . . . a revocable

[4] The All-In Pricing Law adopts this definition. *See* Va. Code Ann. § 59.1-607 ("Consumer transaction has the same meaning as provided in § 59.1-198." (quotation omitted)).

license . . . ."). "A license has been described as a right, given by some competent authority to do an act which without such authority would be illegal, a tort, or a trespass." *Bunn v. Offutt*, 216 Va. 681, 683 (1976); *see Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1120–21 (4th Cir. 1995) (noting that "a license is a privilege to do one or more acts on another's land without possessing any interest therein"); *see also Ticket*, Black's Law Dictionary (12th ed. 2024) (defining a ticket as a "certificate indicating that the person to whom it is issued, or the holder, is entitled to some right or privilege"). As previously noted, "[t]he VCPA explicitly states that it encompasses the *sale, license, and lease* of" goods and services. *See Childers v. Woodlawn Funeral & Crematory*, 99 Va. Cir. 388, at *5 (2018). Accordingly, the next step is to determine what such a licensee, in this case, a ticket holder, is permitted to do pursuant to said license. *See Copley v. Bactolac Pharm., Inc.*, No. 18-CV-575 (FB) (PK), 2021 WL 918313, at *3 (E.D.N.Y. Mar. 10, 2021) (explaining that the VCPA was not applicable where the defendant did not "sell, lease or license" goods or services); *see also* Va. Code Ann. § 59.1-198 (defining "consumer transaction" as "[t]he advertisement, sale, lease, *license*, or offering for sale, lease, or *license*, of goods or services . . . ." (emphasis added)).

Here the license is not simply for "admission to [a] place of amusement," but it permits an individual "to attend and witness . . . entertainment." *W.W.V.*, 113 Va. at 729–730; *see Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 387 (4th Cir. 2024) (explaining that a ticket provided a "license to attend [a] football game"); *Greenwood v. Busch Ent.*

*Corp.*, 101 F. Supp. 2d 292, 294–95 (E.D. Pa. 2000) (holding that the sale of a ticket to an amusement park was the license of a service). (*See* Dkt. 1 at 2 (describing Defendant as "a global theme park and entertainment company" that owns Busch Gardens Williamsburg, which is "home to world-class roller coasters, award-winning entertainment, and more than 50 rides and attractions," and Water Country USA, which "is Virginia's largest water park, offering a variety of water slides, pools, and other attractions").) After all, a ticket does not permit an individual to enter such a park when it is closed and the rides, attractions, and other amusements are not operating, nor would most individuals purchase a ticket to do so. *See Simms*, 2012 WL 1108779, at *3 (explaining that a ticket is a license granting "permission to enter the []grounds and make use of the amusements thereon"); *Eves v. S.P. Parks, Inc.*, No. CIV.A. 87-7776, 1988 WL 109107, at *1 (E.D. Pa. Oct. 17, 1988) ("[A] ticket gave [the plaintiff] a license to enter the park premises and participate in its activities."). (*See* Dkt. 23 at 8 ("A theme park visit is inseparable from the supplier's work: operating rides and attractions [and] providing entertainment . . . .").) Of course, to witness entertainment or make use of amusements—such as rides—certain work must be performed, specifically, the provision of such entertainment or the operation of such rides. *See Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 102 S.W.3d 526, 528 (Mo. 2003) ("The true object of the transactions in this case is the service of amusement, . . . [tickets] are the sale of permission to enter a place of amusement and become the recipient of a service."); *see also Muscente v. Jolly Roger Rides, Inc.*, No. 24-CV-02304-ABA, 2025 WL 2257622, at *4 (D. Md. Aug. 7, 2025) ("[C]ourts have long

held that amusement park operators . . . provide services.”). (*See* Dkt. 23 at 8 (“[P]atrons visit amusement parks to receive services—namely, amusement services—e.g., work performed by the supplier, the theme park operator” and that (emphasis omitted)).)

The court concludes that, under Virginia law, an amusement park ticket is a license to enjoy certain services. *See Anderson v. SeaWorld Parks & Ent., Inc.*, No. 15-CV-02172-JSW, 2016 WL 8929295, at *10 (N.D. Cal. Nov. 7, 2016) (noting that an admission ticket to a theme park is required for a consumer to avail themselves of entertainment services provided by the park); *see also Simms v. Jones*, 879 F. Supp. 2d 595, 603 (N.D. Tex. 2012) (concluding that individuals with tickets to the Super Bowl were “consumers of services”), *aff'd sub nom. Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016); *WSM, Inc. v. Hilton*, 545 F. Supp. 1212, 1214 (W.D. Mo. 1982) (mentioning “amusement park services”), *aff'd*, 724 F.2d 1320 (8th Cir. 1984); *Walt Disney Prods. v. Jeffries*, No. 77 C 3615, 1981 WL 40578, at *1 (N.D. Ill. June 5, 1981) (noting “entertainment services rendered in an amusement-type park”). As a result, a ticket to Defendant’s parks falls within the scope of a consumer transaction as defined by the VCPA as it is a license of services. *See* § 59.1-198 (defining “consumer transaction” as “[t]he advertisement, sale, lease, *license*, or offering for sale, lease, or license, of goods or *services*” (emphasis added)); *see also Ballagh v. Fauber Enters., Inc.*, 290 Va. 120, 125 (2015) (noting that the VCPA is remedial legislation and such it should be construed “liberally, in favor of the injured party”); *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp.

2d 443, 456 (E.D. Va. 2009) (applying the VCPA to services supplied by a company purporting to provide tourist space flights).[5]

For this reason, the court departs from the analysis in *Gurwell v. Sea World Parks & Ent. LLC*, No. 2:20CV312, 2021 WL 4168503 (E.D. Va. Aug. 11, 2021). There, the court similarly noted that a ticket was a license. *See id.* at *8 ("Virginia law recognizes that admissions tickets are not real property, but the license of a right."). The court then concluded that such a "license is not a service" because "a pass to the [p]arks does not constitute work which is performed for Plaintiff." *Id.* at *9. The court, however, did not address whether the operation of rides and attractions constituted services, to which the ticket was a license. Additionally, in conducting its analysis, the *Gurwell* court relied on analysis of a court interpreting the California Consumer Protection Act (CLRA). *See Kouball v. SeaWorld Parks & Ent., Inc.*, No. 20-CV-870-CAB-BGS, 2020 WL 5408918, at *5 (S.D. Cal. Sept. 9, 2020), *aff'd*, No. 20-56069, 2021 WL 4947877 (9th Cir. Oct. 25, 2021). However, the CLRA regulates "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services." Cal. Civ. Code Ann. § 1770. Notably, the text of the CLRA makes plain that it does not apply to the license of goods or services, unlike the VCPA, and accordingly, the court declines to similarly rely on such analysis. *See id.*; *see also* Va. Code Ann. § 59.1-

---

[5] Because the court determines that a ticket to Defendant's parks is a license for services, the court declines to address parties' arguments of whether it is also a good. (*See* Dkt. 22 at 7–; Dkt. 23 at 7–8.) *Cf. Mr. B's, Inc. v. City of Chicago*, 302 Ill. App. 3d 930, 937 (1998) (concluding that tickets constituted "tangible personal property").

198 (defining "consumer transaction" as "[t]he advertisement, sale, lease, *license*, or offering for sale, lease, or license . . ." (emphasis added)).

As to Virginia's All-In Pricing Law, the statute states that

> [n]o supplier shall, in connection with a consumer transaction, advertise or display a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges. A supplier that provides both a good and a service to consumers may comply with this section by displaying or advertising the total price of the good separately from the total price or rate charged for providing the service.

Va. Code Ann. § 59.1-608(A). The applicability of the statute to tickets is bolstered by the inclusion of a provision noting that "[a] provider of live-event tickets that complies with the provisions of 16 C.F.R. Part 464 relating to live-event tickets shall be deemed compliant with this section." Va. Code Ann. § 59.1-608(H). If tickets were not covered by Virginia's All-In Pricing Law, the inclusion of such language would be superfluous. *See Nielsen v. Preap*, 586 U.S. 392, 414 (2019) (explaining that "the interpretive canon against surplusage" is "the idea that every word and every provision is to be given effect and that none should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence" (quotation omitted)); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").[6]

[6] Defendant correctly notes that this provision is an exclusion from liability under the All-In Pricing Law. (Dkt. 26 at 4.) But the point remains that such an exclusion would not be necessary if the statute did not apply to tickets.

Defendant argues that "tickets to Defendant's parks do not constitute VCPA services." (Dkt. 22 at 8.) As previously discussed, the court agrees that the ticket itself is not a service, rather, the ticket is the license by which individuals gain access to Defendant's services and thus falls within the scope of the VCPA and Virginia's All-In Pricing Law. *See Christopherson v. Cinema Ent. Corp.*, 161 F.4th 525, 529 (8th Cir. 2025) (noting that a ticket to a movie theater permits a patron to access the theater's "movie exhibition and food service"); *Goodrich v. Alterra Mountain Co.*, No. 20-CV-01057-RM-SKC, 2021 WL 2633326, at *11 (D. Colo. June 25, 2021) (concluding that a purchasing a pass included both a license to be on the defendants' property and access to the defendants' services); *Sells v. Six Flags Over Texas, Inc.*, No. CIV.A.3:96-CV-1574-D, 1997 WL 527320, at *3 (N.D. Tex. Aug. 14, 1997) (explaining that a theme park was "in the business of providing amusement park entertainment to its patrons" and "provides a service in the form of entertainment").[7] Nevertheless, the court recognizes that whether the VCPA applies to tickets is nearly a novel issue, having only been previously considered once before in *Gurwell*. To that end, upon proper motion from either party, the court would consider certifying a question to the Supreme Court of Virginia as to the applicability of the VCPA to tickets or would consider certifying the order for interlocutory appeal. *See* Va. Sup. Ct. R. 5:40 (outlining the procedures for certifying a question to the Supreme Court of Virginia);

---

[7] Because the court concludes that Plaintiff can bring his claims under the VCPA pursuant to § 59.1-200(A)(14), the court declines to address whether § 59.1-200(A)(8) is applicable.

*see also Lipton v. Documation, Inc.*, 590 F. Supp. 290, 292 (M.D. Fla. 1982) (certifying an order for interlocutory appeal), *aff'd*, 734 F.2d 740 (11th Cir. 1984).

**B. Failure to State a Claim**

Defendant argues that Plaintiff's VCPA claim should also be dismissed for additional pleading failures. (*See* Dkt. 22 at 9–17.)[8] First, Defendant asserts that Plaintiff fails to plead a fraudulent act or omission. (*Id.* at 9–14.) Second, Defendant disputes whether Plaintiff pleads reasonable reliance. (*Id.* at 15–17.) The court addresses each in turn.

"To properly state a cause of action under the VCPA, Plaintiff must allege (1) fraud, (2) by a supplier, (3) in a consumer transaction." *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010). As a claim sounding in fraud, a VCPA claim is "governed by the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure." *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015). As a result, Plaintiff is "required to state with particularity the circumstances constituting fraud," including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quotation omitted). "These facts are often referred to as the who, what, when, where, and how of the alleged fraud." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 705 (4th Cir. 2018) (quotation omitted). "[L]ack of compliance with Rule 9(b)'s pleading requirements is

[8] Defendant does not otherwise identify any other pleading deficiencies necessitating dismissal regarding Plaintiff's claim under Virginia's All-In Pricing Law.

treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

Defendant argues that "Plaintiff fails to plausibly plead the 'what'—the contents of the false representation." (Dkt. 22 at 10.) They seem to argue that "Plaintiff does not articulate the substance of any such false statement" because "he was shown $11.99 in 'Taxes and Fees'" which was accurate as "the taxes were $0.00 and the service fee was $11.99, and $0.00 plus $11.99 equals $11.99." (*Id.* (quotation omitted).) Still, at this stage, "the [c]ourt finds that Plaintiffs have plausibly alleged an actionable misrepresentation" because the statement—even if not false—was misleading. *See In re Cap. One 360 Sav. Acct. Int. Rate Litig.*, 779 F. Supp. 3d 666, 713–14 (E.D. Va. 2024) (finding that the plaintiffs adequately alleged actionable misrepresentation even where the defendants asserted that the statement at issue was not false); *Prince v. Johnson Health Tech Trading, Inc.*, 653 F. Supp. 3d 307, 315 (W.D. Va. 2023) (concluding that misleading statements were sufficient to state a claim under the VCPA); *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 656 (W.D. Va. 2013) (finding the defendant's argument that the plaintiff failed to identify the contents of any false representation not persuasive where the court concluded that the plaintiff did identify a specific misrepresentation); *Scott v. WFS Fin., Inc.*, No. CIV A 206CV349, 2007 WL 190237, at *7 (E.D. Va. Jan. 18, 2007) (holding that a plaintiff adequately pled a VCPA claim where he argued the defendants statements were misleading). (Dkt. 1 at 25–28.)

Further, "omissions count as misrepresentations, too" and "Rule 9(b)'s pleading requirements are less strict when dealing with concealment or omission, since

proving an omission is akin to proving a negative." *Berl v. BMW of N. Am., LLC*, 797 F. Supp. 3d 621, 630 (W.D. Va. 2025) (emphasis omitted); *see Fravel*, 973 F. Supp. 2d at 656–57 (collecting cases). Defendant contends that "[t]o the extent Plaintiff's VCPA claim is based on alleged fraud by omission regarding the service fee," it also fails because "the service fee was not omitted." (Dkt. 22 at 11–12 (quotation omitted); *see id.* at 11–14.) That said, Defendant's argument hinges on the introduction of additional screenshots not included in the complaint. (*Id.* at 12–14.) At the motion to dismiss stage, it is improper for the court to consider such additional information, and Defendant fails to explain why the court should make an exception here. *See Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) ("Courts are limited to considering the sufficiency of the allegations set forth in the complaint and the documents attached or incorporated into the complaint." (quotation omitted)); *In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296, at *4 (4th Cir. 1995) ("Although a party can file materials outside the pleadings while seeking court action on a motion to dismiss, the court can rule on the motion without considering the materials."); *Microsoft Corp. v. #9 Software, Inc.*, No. CIV.A. 405CV106, 2005 WL 3447965, at *2 (E.D. Va. Dec. 15, 2005) ("A court reviewing a motion to dismiss relies solely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference."). That is especially true where the plaintiff disputes the authenticity of such attachments, as is the case here. (Dkt. 23 at 15–16 (noting that the screenshot was captured "two months after this action was filed without any indication that the content was presented to consumers during the relevant time period," among other issues).) *See Zak v. Chelsea Therapeutics*

*Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) ("Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." (alterations adopted and quotation omitted)). Defendant makes no effort to establish the authenticity of these screenshots nor respond to Plaintiff's argument in their reply, so the court treats the argument as abandoned. (*See* Dkt. 26.) *See Jones v. Bank of America, N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the [c]ourt deems such argument or claim abandoned." (quotation omitted)).

Next, "Virginia courts have consistently held that reliance is required to establish a VCPA claim." *Adardour v. Am. Settlements Inc.*, No. 1:08CV798 AJT/TRJ, 2009 WL 1971458, at *3 (E.D. Va. July 2, 2009) (collecting cases), *aff'd*, 382 F. App'x 249 (4th Cir. 2010). "Failure to plead reasonable reliance is fatal to a" VCPA claim. *Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 F. App'x 504, 506 (4th Cir. 2010). Here, the court concludes that Plaintiff sufficiently pled that he relied on Defendant's representations. (*See* Dkt. 1 at 6–7, 27.) *See Berl*, 797 F. Supp. 3d at 630 (explaining that where the plaintiffs "directly state[d] that they relied upon" certain misrepresentations and "these allegations appear[ed] on the face of the complaint, it [wa]s hard to see how [the p]laintiffs failed to allege reliance"); *Elliott v. Great Point Partners, LLC*, No. 1:10CV1019 JCC JFA, 2011 WL 63657, at *4 (E.D. Va. Jan. 5, 2011) (noting that "[o]n the face of their [c]omplaint, [the p]laintiffs allege[d] reasonable reliance" and that their failure to "conduct their own investigation [wa]s

not an absolute bar to their fraud claim" as "[i]t is plausible that their lack of investigation was not in itself unreasonable, and it is plausible that even then they may be excused from that duty").

Defendant disagrees that Plaintiff's reliance was reasonable. (Dkt. 22 at 15–17.) Although Defendant cites several cases on reasonable reliance, many of those cases resolve this question at the summary judgment stage, making them inapposite. (*Id.* (citing *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614 (4th Cir. 1999), *White v. Potocska*, 589 F. Supp. 2d 631 (E.D. Va. 2008), *PNC Bank, Nat'l Ass'n v. Dominion Energy Mgmt., Inc.*, No. 3:17CV311, 2018 WL 1768061 (E.D. Va. Apr. 12, 2018), and *Adardour*, 2009 WL 1971458.) Any reliance as to the other cases Defendant cites is also misplaced. (*See* Dkt. 22 at 15–17.) For instance, in *Curtis v. Propel Prop. Tax Funding, LLC*, No. 3:16-CV-00731-JAG, 2018 WL 717006 (E.D. Va. Feb. 5, 2018), the court disagreed with the plaintiff that "he need not plead reliance" and dismissed the complaint because the plaintiff did "not allege that he relied on any misrepresentations." *Id.* at *3. Ultimately, "at this stage in the litigation and with the record undeveloped, [the court] cannot say that as a matter of law [Plaintiff's reliance] was unreasonable." *See Elliott*, 2011 WL 63657, at *6; *see also In re Cap. One*, 779 F. Supp. 3d at 722 ("Justifiable reliance is typically a question of fact for the fact-finder to decide . . . ." (alteration adopted and quotation omitted)).

**C. The Voluntary Payment Doctrine**

Defendant argues that Plaintiff's VCPA claim is barred by the voluntary payment doctrine. (Dkt. 22 at 17–20.) The "voluntary payment doctrine, as established under Virginia common law," provides that

> [w]here a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, [1)] without an immediate and urgent necessity therefor, or [2)] unless to release his person or property from detention, or [3)] to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back. And the fact that the party at the time of making the payment, files a written protest, does not make the payment involuntary.

*D.R. Horton, Inc. v. Bd. of Sup'rs for Cnty. of Warren*, 285 Va. 467, 472 (2013) (quotation omitted). But the voluntary payment doctrine does not apply to claims sounding in fraud. *See Sheehy v. Williams*, 299 Va. 274, 278 (2020) ("The premise of this doctrine was that, absent a showing of fraud or other misconduct, a claimant could not demand that a court return money to him that he had voluntarily paid to another." (emphasis omitted)); *Williams v. Consolvo*, 237 Va. 608, 613 (1989) ("Where money has been paid under a mistake of the facts, or under circumstances of fraud or extortion, or as a necessary means to obtain the possession of goods wrongfully withheld from the party paying the money, an action may be maintained for the money wrongfully exacted." (quotation omitted)).

Defendant acknowledges that "a showing of fraud renders the doctrine inapplicable," but contends that the complaint "contains no plausible allegations of fraud." (Dkt. 22 at 19.) As explained above, the court disagrees. Thus, because Plaintiff's claims sound in fraud, the voluntary payment doctrine does not apply. *See*

*Nestler v. Scarabelli*, 77 Va. App. 440, 465–66 (2023) (concluding that the voluntary payment doctrine did not apply to a claim for tortious fraudulent inducement because the "doctrine does not apply to fraud").[9]

## CONCLUSION

Accordingly:

1. Defendant's motion (Dkt. 22) is **DENIED**.
2. Defendant shall answer the complaint on or before September 1, 2026.

**ORDERED** in Orlando, Florida, on August 14, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

[9] Further, the court is skeptical of permitting a common-law doctrine to effectively overrule a consumer fraud statute. *See Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497 (2014) (explaining that the VCPA was enacted "to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law" and "[t]hat remedial purpose would be nullified by an interpretation of the VCPA that construed it as merely declarative of the common law"); *see also Lee v. Enter. Leasing Co.-W., LLC*, 30 F. Supp. 3d 1002, 1024 (D. Nev. 2014) (declining to apply the voluntary payment doctrine where doing so would " would nullify the consumer protection purpose of the statute . . . which explicitly set forth a civil remedy for precisely this type of violation"); *Bautista v. Valero Mktg. and Supply Co.*, No. 15-CV-05557-RS, 2018 WL 11356583, at *3 n.2 (N.D. Cal. Dec. 4, 2018) (collecting cases).